Filed 7/21/25  P. v. Dallagiacomo CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL GENE DALLAGIACOMO,<br><br>Defendant and Appellant. | C100736<br><br>(Super. Ct. No. 23CF02061) |

A jury convicted defendant Michael Gene Dallagiacomo of possession of cocaine for sale.  Prior to trial, defendant admitted possession of cocaine for sale as a violation of the terms of his postrelease community supervision based on the same conduct.  In admitting a community supervision violation, however, defendant stated that he was admitting only possession of cocaine, not possession for sale.  Defendant asked the trial court to confirm this, which the court appeared to do.  The trial court nonetheless informed the jury in the criminal trial that defendant had admitted possession of cocaine for sale in the community supervision violation case.

1

Defendant contends the trial court erred.  The People concede the error but argue defendant forfeited the claim on appeal and the error was harmless.  We disagree and reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2023, Kevin Mannel, the probation officer supervising defendant, searched defendant's bedroom with another officer.  They found a meth pipe; a black trash bag containing multiple bags of processed cannabis; two large food scales; two machetes; a cigarette tin containing approximately one gram of methamphetamine; and a flashlight containing 0.9 grams of methamphetamine, 7.3 grams of cocaine, and 24.5 grams of cocaine in baggies.  When Mannell questioned defendant, he denied using cocaine and said he was holding it for someone else.  During Mannel's supervision of defendant, he had only tested positive for methamphetamine, not for cocaine.

The officers also took defendant's cell phone.  Pursuant to a search warrant, the contents of the cell phone were downloaded.  Mannell located text messages he concluded were indicative of cocaine sales.[1]  According to Mannell, the language, quantities, prices, and delivery arrangements discussed in the text messages were consistent with cocaine sales and not cannabis sales.

In May 2023, a criminal complaint charged defendant with one count of possession of cocaine for sale and alleged a prior strike based on a 2011 conviction for making criminal threats.

---

[1]     Mannell was the prosecution's key witness at trial, testifying as a percipient witness and as an expert on the use, possession, and sale of narcotics.  Mannell testified extensively regarding specific text messages that he interpreted as referring to cocaine sales.  In the discussion section, we review specific messages the People argue constitute overwhelming evidence of cocaine sales by defendant.

On July 19, 2023, defendant admitted a violation of his community supervision in front of Judge Corey J. Caraway.[2] The trial court asked defendant, "Do you admit that on May 19 of 2023 you were in violation of Health and Safety Code [s]ection 11351, violation of condition[ No.] (2)(d)?" Defendant responded: "I do, your Honor. This is just simply -- I'm admitting to possession of cocaine, correct?" According to the reporter's transcript, the court replied: "Mm-hmm." Defendant then said: "Yes, [m]a'am." Based on defendant's admission, the trial court sustained a May 2023 petition alleging defendant violated the terms of his community supervision. The trial court revoked and reinstated defendant's community supervision and ordered defendant to serve 180 days in jail with credit for time served.

In August 2023, the trial court released defendant to a sober living facility. In November 2023, while defendant was living at the facility, he was seen on surveillance cameras carrying a box that was discovered to contain a loaded gun when located in defendant's room. When the executive director of the facility told defendant he could not come back inside the facility, defendant said, "I'm going to go to jail for a gun."

In December 2023, defendant was charged with possession of cocaine for sale, possession of a firearm by a felon, and possession of ammunition by a felon. The information alleged that defendant committed the firearm and ammunition possession charges while released from custody on the cocaine possession count and also alleged a prior strike based on a 2011 conviction for making criminal threats.

At a hearing on in limine motions on December 19, 2023, in front of Judge Jesus A. Rodriguez, the prosecutor argued, "[D]efendant has previously admitted his

---

[2]    The community supervision violation case file, including the petition and minutes from the July 19, 2023 hearing, are not in the record. However, there is no dispute that the same conduct alleged in the criminal complaint was also alleged as a violation of community supervision.

[community supervision] violation for the [Health and Safety Code section] 11351" and "admission to the [section] 11351 [community supervision] violation is a party opponent admission and should be permitted in our case in chief." The trial court said: "I would tend to agree. He was represented by counsel. The admission took place on July 19th of this year. He admitted the conduct and allegation."

Defense counsel, who had not represented defendant in the community supervision violation case, responded: "Your Honor, my client indicates he thought he was admitting a violation more based on general terms of the violation. He's indicating he did not in fact admit to possessing cocaine for sale[] in that admission. [¶] And I -- my problem is -- so he indicates he specifically said that on the record. My problem is I have no transcript of it. I don't know what the nature of the admission was. I -- I have absolutely no way to verify it at this point because discussing this matter with the other district attorney that was handling the case up until [the current prosecutor], he never once made any indication that the admission was in fact in or taken. He never indicated to me he intended on using that admission during trial."

The trial court replied: "The petition on that [community supervision] violation was filed May 23rd. The [p]etition alleges a single count [that] stated on May 19th of this year defendant was in violation of Health and Safety Code [section] 11351, a violation of post-release community supervision condition number 2(b). [¶] So that's what he admitted to. The minutes from July 19 reflect that he made an admission to that petition. So that's an admission. It comes in. He was represented by counsel. The minutes reflect that he was apprised of all of his rights, he waived them, and he admitted the petition, so it comes in."

During trial, the trial court informed jurors it was taking judicial notice of the community supervision case file. The court explained that defendant "had a petition filed alleging that he violated the terms of his [community supervision]. And, specifically, the allegation was that on May 19th of 2023, he was in violation of Health and Safety Code

4

[s]ection 11351, a violation of post release community supervision, condition [No.] (2)(b). [Section] 11351 is a charge of possession of [cocaine for sale]. [¶] The [c]ourt's minutes from that particular case on July 19 reflect that on that day [defendant] admitted that alleged violation."

When the prosecution rested, defense counsel indicated defendant wanted to bring a *Marsden*[3] motion. At the hearing, defendant said: "I brought up certain things like -- I believe the day before I was released to the program -- it may have been the court day two weeks before that, when admitting the [community supervision] violation to Judge Corie Caraway, I specifically spoke up and said, You [*sic*] Honor, I'm not admitting to possession with intent to sale [*sic*] this cocaine or controlled substance, correct? I'm admitting to not obeying all laws. They caught me with a big bag of drugs, I understand that. But I specifically asked that. And I believe the judge confirmed that. My mother believed she heard the same thing, but I am trying to bring these things up with him, and just the other, two days ago, you instructed the jury that I admitted to the very thing I'm sitting here trying to defend myself from. [¶] So it's -- I don't know, Your Honor. I feel in part like I'm being railroaded, like I didn't understand certain things."

The trial court denied the motion.

In initial closing argument, the prosecutor asserted that defendant's possession of cocaine was not in dispute, "so the real question here is -- the point of contention is, did he intend to sell it. That's what we're really trying to figure out." On that point, the prosecutor said: "And let's not forget, . . . defendant admitted it. He had a violation of [community] supervision in court on the first case on [c]ount 1 back when he was arrested in May. He was brought to court and he admitted -- not the crime itself in our

---

3       *People v. Marsden* (1970) 2 Cal.3d 118.

5

case, but on the violation. He admitted, yes, I did violate my supervision by violating Health and Safety Code [s]ection 11351, possession of cocaine for sale."

The prosecutor returned to this point in rebuttal closing argument. "So the idea that . . . defendant admitted his violation of supervision petition, yes. He admitted it. He had admitted it and went to [a sober living facility]. I would submit to you that is an attempt at accountability, trying to take some responsibility for his actions, I did do that. He could have denied it, but he chose to admit it, and chose to go to treatment. Obviously, that didn't go so well. He picked up a new crime, and that's why we're here on [the firearm and ammunition possession counts]. But that's not some indication that he didn't [do it] -- he admitted the crime."

In conclusion, the prosecutor argued: "Ladies and gentlemen, just because we are here today in a jury trial, and . . . defendant has exercised his [c]onstitutional right to a jury trial, does not mean there is a question. We are here because he has invoked that right, an absolute right. That doesn't mean there's any unknown answers or any questions or unsolved mysteries. The evidence shows -- the testimony and the physical evidence, the messages, his own words, [and] his own admission show that this case has been proven beyond a reasonable doubt."

The jury found defendant guilty on the cocaine possession for sale count but deadlocked on the possession of a firearm and ammunition counts. The trial court declared a mistrial on those counts. Defendant waived jury trial on the strike allegation, which the trial court found to be true. The court sentenced defendant to eight years, the upper term doubled by the strike, and imposed mandatory minimum fees and assessments.

Defendant appeals.

### DISCUSSION

Defendant contends his admission to possession of cocaine for sale was involuntary and should not have been admitted as evidence. The People concede the

6

error but argue that defendant forfeited the claim on appeal and the error was harmless. We reverse the judgment.

I

*Forfeiture*

The People argue forfeiture based on defendant's failure to specifically object when the prosecution moved to admit evidence of defendant's admission of the community supervision violation, as well as when the trial court informed the jury of the admission. Defendant argues his counsel's argument when the prosecution sought to introduce this evidence was specific enough to apprise the trial court of the issue. We agree with defendant.

To preserve an evidentiary issue for appeal, the objecting party must make a timely objection stating the specific ground on which it is made. (Evid. Code, § 353, subd. (a); *People v. Williams* (2008) 43 Cal.4th 584, 620.) However, this "requirement must be interpreted reasonably, not formalistically." (*People v. Partida* (2005) 37 Cal.4th 428, 434.) "The statute does not require any particular form of objection. Rather, 'the objection must be made in such a way as to alert the trial court to the nature of the anticipated evidence and the basis on which exclusion is sought, and to afford the [prosecution] an opportunity to establish its admissibility.' [Citation.] What is important is that the objection fairly inform the trial court, as well as the party offering the evidence, of the specific reason or reasons the objecting party believes the evidence should be excluded, so the party offering the evidence can respond appropriately and the court can make a fully informed ruling. If the court overrules the objection, the objecting party may argue on appeal that the evidence should have been excluded for the reason asserted at trial, but it may not argue on appeal that the court should have excluded the evidence for a reason different from the one stated at trial." (*Id*. at pp. 434-435; see also *People v. Zavala* (2024) 105 Cal.App.5th 366, 373, fn. 2 (*Zavala*).)

7

At the hearing where the prosecution proposed introducing this evidence, defense counsel explained that defendant maintained he had not admitted the charge for possession of cocaine for sale and the trial judge had confirmed that fact at the time of the admission. The record thus reflects that both the prosecution and trial court were aware of defendant's specific argument. (*Zavala*, *supra*, 105 Cal.App.5th at p. 373, fn. 2.) The trial court then made an informed ruling to admit the evidence, reasoning that the petition alleged a violation of community supervision as a result of a violation of Health and Safety Code section 11351, defendant "made an admission to that petition," he was represented by counsel, and the minutes recorded that defendant was advised of his rights and waived them.

We conclude the purpose of requiring an objection in order for the issue to be raised and considered was served in this case.[4] (*Zavala*, *supra*, 105 Cal.App.5th at p. 373, fn. 2.)

## II

### *Involuntary Admission*

Turning to the merits, we agree with the parties that defendant's admission to possession of cocaine for sale was involuntary. The nature of the crime defendant admitted was never articulated in words at the plea hearing. The statute defendant admitting violating was identified only by code number. More significantly, the record shows that defendant sought confirmation from the trial court that he was admitting only

---

[4] The People address the merits of defendant's admissibility claim because defendant also argues on appeal that trial counsel rendered ineffective assistance in failing to investigate his assertion that his admission to the community supervision violation was involuntary. (*Zavala*, *supra*, 105 Cal.App.5th at pp. 373-374 ["In light of [the] defendant's claim of ineffective assistance of counsel, we will exercise our discretion to reach the merits in lieu of addressing [the] defendant's ineffective assistance claim"].) We need not address defendant's ineffective assistance claim because we reject the People's forfeiture argument.

cocaine possession and thought he had gotten it from the court.  When defendant asked the trial court if he was admitting only possession, the court responded by saying, "Mm-hmm."  Defendant reasonably understood this to be an affirmative response.  (See Merriam-Webster Dictionary (2025) < https://www.merriam-webster.com/dictionary/mm-hmm > [as of July 21, 2025], archived at < https://perma.cc/LFG4-LC3C > ["mm-hmm" defined as an interjection "used to indicate agreement, satisfaction, or encouragement to continue speaking"]; *People v. Leon* (2020) 8 Cal.5th 831, 843-844 [the defendant affirmed his understanding of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 by nodding and saying " 'mmhmm' when asked if he understood" them].)

An admission may be involuntary if the defendant had such an incomplete understanding of the charge that the admission does not constitute an intelligent admission of guilt.  (*Henderson v. Morgan* (1976) 426 U.S. 637, 645, fn. 13.)  Absent adequate notice of the charge against the defendant, or proof that the defendant actually understood the charge, the admission cannot be voluntary.  (*Ibid*.)

Here, the trial court directly contributed to defendant's misunderstanding of the nature of the charge he was admitting.  Accordingly, defendant's admission was involuntary and inadmissible at trial.  (See *People v. Neal* (2003) 31 Cal.4th 63, 85 (*Neal*); see also *People v. Falaniko* (2016) 1 Cal.App.5th 1234, 1249 [" 'An involuntary confession may not be introduced into evidence at trial' "].)

III

*Harmless Error*

We conclude the trial court's error in allowing evidence of defendant's involuntary admission to a community supervision violation involving the same charge as the criminal prosecution is subject to the same harmless error standard as an involuntary confession.  When an involuntary confession is admitted at trial, prejudice from the error is generally viewed under the reasonable probability test embodied in article VI, section 13 of the California Constitution (see *People v. Watson* (1956) 46 Cal.2d 818,

9

836), unless its exclusion is mandated under the federal Constitution, in which case the beyond a reasonable doubt standard of harmless error under *Chapman v. California* (1967) 386 U.S. 18, 24 is applicable.  Unsurprisingly, defendant argues for application of the *Chapman* standard, while the People maintain *Watson* is the appropriate standard.

"[*A*]*ny* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law, 'even though there is ample evidence aside from the confession to support the conviction.' "  (*Mincey v. Arizona* (1978) 437 U.S. 385, 398.)  Accordingly, we will apply the stricter *Chapman* test.  (See *Neal*, *supra*, 31 Cal.4th at p. 86 [*Chapman* standard is applicable to "erroneous admission of involuntary statements"], citing *Arizona v. Fulminante* (1991) 499 U.S. 279, 310.)

The *Chapman* standard requires the People to prove beyond a reasonable doubt that the error did not contribute to the verdict.  (*Neal*, *supra*, 31 Cal.4th at p. 86.)  An error that does not contribute to the verdict is " 'unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.' "  (*Ibid.*)  "[T]he focus is what the jury actually decided and whether the error might have tainted its decision.  That is to say, the issue is 'whether the . . . verdict actually rendered in *this* trial was surely unattributable to the error.' "  (*Ibid.*, quoting *Sullivan v. Louisiana* (1993) 508 U.S. 275, 279.)

Under this standard, defendant's admission is likely to be prejudicial.  In *Neal*, our Supreme Court noted that, in *People v. Cahill* (1993) 5 Cal.4th 478, it recognized that " 'confessions, "as a class," "[a]lmost invariably" will provide persuasive evidence of [the] defendant's guilt [citation], . . . that such confessions often operate "as a kind of evidentiary bombshell which shatters the defense" [citation], . . . [and therefore] that the improper admission of a confession is much more likely . . . to be prejudicial.' "  (*Neal*, *supra*, 31 Cal.4th at p. 86, citing *Cahill*, at p. 503; see *People v. Bridgeford* (2015) 241 Cal.App.4th 887, 904 [" 'A confession is like no other evidence.  Indeed, "the defendant's own confession is probably the most probative and damaging evidence that

10

can be admitted against him[, her, or them]" ' "], quoting *Arizona v. Fulminante*, *supra*, 499 U.S. at p. 296.)

The People, however, contend the amount of cocaine and packaging material indicated the cocaine was possessed for sale. The search found bags containing 7.3 and 24.5 grams of cocaine, totaling 31.8 grams. Mannel expressed the opinion this quantity would provide 127 to 265 doses, which would suffice for 30 to 75 days of noncontinuous use or as low as 10 days of high-dosage continuous use. The plastic bags found in the flashlight with the cocaine could be used to package narcotics for sale.

Defendant counters that Mannel on cross-examination conceded that a long-term cocaine user would need more of the drug, defendant had 10 to 24 days of cocaine in his possession unless he spread out his usage to 30 to 75 days, that buying cocaine is risky, and it would be logical for a person with a severe cocaine addiction to have a large amount of the drug for personal use. Also, the cocaine was not broken down into smaller bags for sale and defendant did not have scales suitable for weighing cocaine.

The People further argue that text messages on defendant's cell phone indicated sales of cocaine rather than cannabis "given the prices and quantities discussed"; language consistent with cocaine sales, such as " 'step[ping] on' the product," used to refer to diluting cocaine, and " 'cream,' " a street name for cocaine; and defendant's request to " 'toss [him] one queen and let [him] do what it do,' " which Mannel believed involved defendant asking for one ounce of pure cocaine to sell. The People argue the defense theory that defendant possessed the cocaine for personal use was also refuted by Mannel's testimony that he found no evidence of cocaine use in defendant's home and defendant's statement that he did not use cocaine.

Defendant counters that, on cross-examination, Mannel conceded some points that support defendant possessed the cannabis found in his residence for sale and the text messages could refer to cannabis sales. The scales found, while too large to measure cocaine, could be used to measure cannabis.

11

The People conclude, "[T]here was overwhelming evidence that [defendant] possessed the cocaine for sale given: the amount of cocaine—31.8 grams broken down into 24.5 grams and 7.3 grams; the [plastic] bags that could be used for packaging it; text messages on his cell phone that were indicative of cocaine sales given the quantities and prices discussed, references to not stepping on the product, the use of the word cream, and [defendant]'s request to be tossed a queen so that he could sell it; the lack of indicia of cocaine usage in his home; his statement that he did not use cocaine; and Officer Mannel's expert opinion that the cocaine was possessed for sale based on all of the evidence presented." The People argue, "[Defendant]'s admission was merely icing on a substantial cake of circumstantial evidence showing that [defendant] possessed cocaine for sale."

We disagree. The jury could readily find defendant guilty without considering the prosecution's circumstantial evidence. The trial court itself told the jury defendant admitted possession of cocaine for sale. (See *Bollenbach v. United States* (1946) 326 U.S. 607, 612 [" 'The influence of the trial judge on the jury is necessarily and properly of great weight,' [citation], and jurors are ever watchful of the words that fall from [the judge]"].) The prosecutor emphasized multiple times that defendant admitted the very thing he was on trial for, telling the jury that defendant "admitted, yes, [he] did violate [his] supervision by violating Health and Safety Code [s]ection 11351, possession of cocaine for sale" and "he admitted the crime." (See *People v. Bridgeford*, *supra*, 241 Cal.App.4th at p. 905 [jury likely considered the defendant's confession critical where the prosecutor referred to it multiple times in closing].) In short, the jury was presented with a full and complete admission to the crime by both the court and the prosecutor. Therefore, no other evidence was really necessary to determine guilt. Put another way, evidence of defendant's admission to the crime on trial offered the jury a direct path to a finding of guilt. And to the extent the jury had any doubts about the circumstantial evidence, defendant's admission to the charge removed any doubt.

12

Additionally, the jury deliberated for just over two hours before reaching a guilty verdict on possession of cocaine for sale, suggesting the jury found defendant's guilt readily established. By contrast, in the same time frame, the jury was deadlocked on the gun and ammunition possession charges where the circumstantial evidence of guilt was equally compelling, i.e., defendant was observed on video surveillance carrying a box to and from his car that was found in his room and contained a loaded handgun.

In sum, the defense at trial was that defendant possessed the cocaine for his own use. Evidence that he admitted the crime of possession of cocaine for sale operated as an " ' "evidentiary bombshell" ' " that " ' "shatter[ed] the defense." ' " (*Neal*, *supra*, 31 Cal.4th at p. 86.)[5] Accordingly, we cannot say the verdict was " 'surely unattributable' " to the erroneous admission of evidence that defendant had admitted the violation in another proceeding. (*Neal*, at p. 86.)

---

[5] Because we conclude that introduction of defendant's involuntary admission to violating Health and Safety Code section 11351 into evidence at trial was prejudicial error, we need not consider defendant's claim that introduction of evidence of defendant's admission to a community supervision violation was in contravention of his Fifth Amendment right against self-incrimination and the use immunity exclusion recognized in *People v. Coleman* (1975) 13 Cal.3d 867, 889.

13

DISPOSITION

The judgment is reversed and the matter is remanded to the trial court for retrial.


/s/_____
ROBIE, Acting P. J.


We concur:


/s/_____
BOULWARE EURIE, J.


/s/_____
WISEMAN, J.*


_____

*       Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14